## BURNSIDE v. WATKINS.

1. Where a tract of land was assigned to the widow of an intestate at a certain valuation, and the rest of the real estate was appraised and ordered to be sold, the widow's share is one-third of the sum of the appraisement of her tract plus the price for which the other lands sold, and not one-third of the appraised value of all the lands. And she having purchased a part of the other lands for $500 and given her bond for $786, when her share in all the real estate, as above decided, was $286 less than the appraised value of the tract assigned to her, it fol-

lows that her bond must have been given for equality of partition, as
well as for the land purchased.

2. Under an execution issued upon a judgment obtained on this bond,
this widow (or, she being dead, her children) are entitled to claim home-
stead in the tract of land so assigned to the widow, (1) because there
was no endorsement on this judgment to the effect that the judgment
was for the purchase money of such tract, which is the only way, under
the law, by which the homestead can be sold to pay the purchase
money; and (2) because no such endorsement could have been made,
as the bond was not given for that purpose and "no other," but was
given only in part for the purchase money of such tract.

3. There was no statutory lien under the act of 1791 (in force at the date
of the bond) because (1) the amount due on the tract assigned was not
ascertained by the commissioners in partition or by any order of court;
(2) no sum of money was assessed by these commissioners, to be paid
by the widow; and (3) no such lien on a tract assigned existed in favor
of the officer of the court, the plaintiff here, who made the sale of the
other lands of the estate.

Before KERSHAW, J., Laurens, September, 1888.

The opinion fully states the case.

*Mr. W. H. Martin*, for appellants.

*Messrs. Ferguson & Featherstone*, contra.

March 27, 1889.   The opinion of the court was delivered by
MR. JUSTICE McIVER.   On May 10, 1870, Elisha Watkins,
being seized and possessed of certain real estate, died intestate,
leaving as his heirs at law his widow, Elizabeth C. Watkins, and
her children, as well as his children by a former marriage.   Un-
der proceedings for the partition of his estate, instituted in the
Court of Probate, commissioners were appointed, who made their
return, stating that they had divided the real estate of intestate
into three tracts, and valued the same as follows, viz.: Tract No.
1, containing one hundred and fifty-five acres, at six dollars per
acre; tract No. 2, containing sixty-five acres, at eleven dollars
per acre; and tract No. 3, containing one hundred and ninety-
two acres, at five dollars per acre.   They recommended that tract
No. 1 "be set off to Mrs. Elizabeth C. Watkins, the widow of

said deceased, and that tracts Nos. 2 and 3 be sold upon such terms as the court will direct."

On November 23, 1870, this return of the commissioners in partition was confirmed by an order of the judge of probate, who further ordered "that tract No. 1 be set off to the widow of said deceased, and tracts Nos. 2 and 3 be sold by this court, upon the 19th day of December next, upon a credit of one and two years, interest from day of sale, and to be compounded if not paid annually. Purchaser to give bond and mortgage to secure purchase money. The costs of these proceedings to be paid cash." In pursuance of this order, the two tracts, Nos. 2 and 3, were sold on the day appointed, each for the sum of five hundred dollars, the widow being the purchaser of tract No. 2; and on December 19, 1870, the widow, Elizabeth C. Watkins, with the other defendants, executed a bond to the judge of probate, in the penal sum of $1,573.33, to secure the payment of the sum of $786.67, "in two annual instalments, with simple interest from date."

On July 15, 1881, the judge of probate commenced an action against said Elizabeth C. Watkins and her sureties above named on the said bond, and on March 7, 1883, recovered judgment thereon for the sum of $1,456.64 and costs. Under execution issued to enforce said judgment, tract No. 2 was sold for the sum of four hundred dollars, but at what time is not stated. On November 26, 1886, the said Elizabeth C. Watkins died intestate, leaving several children, some of whom are minors, and all of them living on tract No. 1, which had been assigned to the widow under the partition proceedings above mentioned. On September 5, 1887, tract No. 1 was levied on by the sheriff under the execution issued to enforce the judgment above mentioned; whereupon the children of Elizabeth C. Watkins gave notice to the sheriff that they claimed homestead in said tract. In pursuance of this notice, appraisers were duly appointed, who made return, appraising the said tract at $648.75, and assigning the same to the said children as a homestead. To this return, the plaintiff excepted upon two grounds, but the second having been abandoned, it is only necessary to state the first, which is as follows: "Because the judgment obtained by said plaintiff against Elizabeth C. Watkins, in her life-time, is based upon a bond given to

secure the purchase money for the tract of land set off by the said appraisers to the defendants as a homestead."

Upon this return and the exception thereto, the case came on to be heard by his honor, Judge Kershaw, who rendered judgment (omitting the formal parts) as follows : "It appearing that the judgment on which said execution was issued, was obtained upon a bond given by the said Elizabeth C. Watkins, for equality of partition in part on the division of said real estate, which was set off by the said appraisers as a homestead herein—it is ordered and adjudged, that the return of said appraisers, in so far as it sets off homestead to the heirs at law of the said Elizabeth C. Watkins in the real estate, be set aside, and, in so far as it sets off personal property, it be affirmed."

From this judgment the children of Elizabeth C. Watkins appeal upon the grounds set out in the record, which are, substantially, as follows : 1st. Because of error in holding that the bond upon which the judgment was recovered was given for equality of partition. 2nd. Because, even if it was, it cannot be regarded as such an obligation as would override the claim of homestead. 3rd. Because, in any event, the claim of homestead should have been sustained to so much of the land as constituted the widow's share, and only the excess thereof could have been made liable to the judgment.

The first ground raises a question of fact, of which the only evidence adduced was that found in the several papers above referred to, it being stated in the "Case" that no parol evidence was offered as to what the bond was given for. Now, as it is not stated in any of these papers that the bond, or any part thereof, was given to secure equality of partition, it is quite clear that the conclusion reached by the Circuit Judge rested entirely upon an inference drawn from what does appear in these papers. There can be but little doubt that such an inference would be fully warranted by what appears in the documentary evidence. The bond was given on the day appointed for the sale, and was undoubtedly intended to secure the payment of the purchase money of the tract No. 2 bid off by the widow ; but as that purchase money only amounted to five hundred dollars, and the bond was given for $286.67 more than that sum, the inference is irresistible, that

the bond was intended to secure not only the payment of the pur-
chase money of tract No. 2, but also something else; and as the
excess over such purchase money corresponds, within a fraction
of a cent, with the amount that would be necessary to equalize
the shares, taking the value of the tract set off to the widow to
be what it was assessed at by the commissioners in partition, and
the values of the other two tracts to be what they brought at the
sale, the inference would be at least fair, that so much of the
bond as exceeded the purchase money of the tract bought by the
widow was given to secure equality of partition. The circum-
stances relied on to repel this inference—that the bond was not
drawn in accordance with the terms prescribed by the order of
sale, in that it called for simple interest, instead of interest pay-
able annually, and in that there does not appear to have been
any mortgage, as required by the order of sale, together with the
fact that no allowance was made for the cash payment required—
would scarcely be sufficient for that purpose.

It is contended, however, that the mode just adverted to of
ascertaining the amount necessary to produce equality of parti-
tion, would be improper and unjust to the widow; for if the tract
assigned to her should be estimated at the value placed upon it
by the commissioners in partition, then the other two tracts ought
to be estimated in the same way, and if that were done, then the
sum necessary to produce equality of partition would be $61.66,
instead of $286.67, thus destroying the inference arising from the
practical identity between the sum necessary to produce equality,
and the excess of the bond over the purchase money of tract No.
2. To illustrate: The mode adopted to ascertain the sum neces-
sary to produce equality of partition was as follows:

| | | |
|---|---|---|
| Value of tract No. 1, as assigned to widow, | $930 00 | |
| " tracts Nos. 2 & 3, as ascertained | | |
| by sale, | 1,000 00 | 1,930 00 |
| Of this the widow received in tract No. 1, | 930 00 | |
| And her share being $\frac{1}{3}$ of $1,930, | 643 33$\frac{1}{3}$ | |
| She would owe, | 286 66$\frac{2}{3}$ | |

But according to the mode suggested by the appellants the fig-
ures would stand as follows:

| | | | |
|---|---|---|---|
| Value of tract No. 1, as assessed by com'rs, | $930 00 | |
| "    "    No. 2, "    "    "    " | 715 00 | |
| "    "    No. 3, "    "    "    " | 960 00 | $2,605 |
| Of this the widow received in No. 1, | 930 00 | |
| And her share being ⅓ of $2,605, | 368 33⅓ | |
| She would owe only, | 61 66⅔ | |

At first view there would seem to be great force in appellant's suggestion, but it must be observed that in the return of the commissioners in partition no amount is mentioned as necessary to secure equality of partition, nor is there any recommendation in regard thereto, though from that return it would seem that the sum of $61.66 was necessary for that purpose. And in the order confirming the return this matter is not mentioned or provided for ; perhaps for the reason that the idea was to await the result of the sale before fixing the amount which the widow should be required to pay in order to secure equality. Accordingly, after the sale was made, the widow gave her bond for an amount not only sufficient to secure the payment of the purchase money of the tract bid off by her, but also the amount, as shown by the result of the sale, to be necessary to secure equality of partition. She was not obliged to accept the tract assigned to her by the commissioners in partition at the valuation placed upon it by them, but might have contested that valuation. This she does not appear to have done, and having accepted that tract at that valuation, she must abide by it.

We think, therefore, that the circumstances of the case as presented by the documentary evidence, were sufficient to justify the conclusion that the bond was given by the said Elizabeth C. Watkins, in part, for the purpose of securing equality of partition.

But, assuming this to be the fact, the question still remains whether the conclusion so reached warranted a judgment setting aside the assignment of homestead. The right of homestead, with the qualifications thereof, rests upon the provisions of the constitution and such statutes as have been enacted to enforce such provisions. Under the law as it stood at the time the bond here in question was given, which, so far as this question is concerned, seems yet to be substantially the same, the homestead exemption did not extend to process issued to enforce the pay-

ment of taxes or obligations contracted for the purchase of said homestead: "*Provided*, the court or authority issuing said process shall certify thereon that the same is issued for some one or more, and no other, of said purposes."

Under this express statutory provision we do not see how one seeking to avoid the homestead exemption, upon the ground that the obligation which he is endeavoring to enforce was contracted for the purchase of such homestead, can be permitted to do so without complying with the condition upon which alone he is authorized to avoid such exemption. The legislature having, in pursuance of the mandate of the constitution, undertaken to provide by "suitable legislation" the manner in which the holder of an obligation contracted for the purchase of a homestead may enforce the same against such homestead, it is difficult to understand by what authority the courts could dispense with that express requirement. We are not at liberty to inquire into the wisdom or propriety of such a requirement, as it is quite sufficient for us to know that the law is so written. But if we were, it would be easy to show that the provision is eminently wise and proper. Before one should be deprived of his sacred right of homestead, it is well that the law requires the clearest and most explicit evidence—a matter of record about which there can be no controversy—of the fact which justifies such deprivation. Indeed, the controversy in this very case affords the strongest illustration of the wisdom of the legislative provision.

Now, as it is not pretended that the required certificate was endorsed upon the process which the plaintiff is seeking to enforce against the homestead in this case, upon the ground that the obligation upon which such process was based was contracted, *in part only*, for the purchase of the homsstead, it seems to us that such process cannot be enforced against the homestead, and that the Circuit Judge erred in holding otherwise. Indeed, it not only does not appear that the required certificate was ever obtained in this case, but it is somewhat difficult to conceive how it could have been obtained. The provision of the statute is explicit, not only that the court issuing the process shall certify thereon that it was issued for some one or more of the purposes specified, but also for "*no other*." Now, as it is conceded that much the larger

30—30

part of the amount of the execution was for a purpose other than the purchase of the homestead, to wit, for the purchase money of tract No. 2, which has already been sold under the execution, we, do not see how it was possible for the plaintiff ever to have obtained the requisite certificate. If a creditor chooses to mix up with an obligation contracted for the purchase of a homestead an obligation of a different character, he must take the consequences of his own act. There certainly was no propriety in so doing in the present instance. Any amount due by the widow for equality should have been made payable directly to the other heirs at law, and there was not only no necessity for embracing it in the bond given to the judge of probate to secure the payment of the purchase money of property sold under his order, but there was no propriety in so doing, as it was well calculated to produce confusion.

It is, however, contended that the amount due by the widow for equality of partition was a statutory lien upon the land assigned to her, under the provisions of the act of 1791, which had not been repealed at the time of the sale under which the bond in question was given, against which a homestead exemption could not be claimed, as such a lien stands on the same footing as a mortgage. Conceding that this is so, we do not see how it can avail the plaintiff in this case. In the first place, the amount due on such lien, so called, was not fixed or determined either in the return of the commissioner in partition, or in the order confirming such return, and it is somewhat difficult to understand how a lien for an unascertained and undefined amount could be enforced. If it should be said that the court may now ascertain the amount, the answer is, that that has never yet been done, for in the judgment appealed from no amount is mentioned as due on account of the purchase money—not even the proportion which it bore to the whole amount of the bond. It is only stated that the bond was given "for equality of partition *in part;*" but what part is not indicated in any way. How, then, could such a lien, if it be a lien, be enforced?

In addition to this, the statutory lien provided for by the act of 1791, owing its existence solely to special statutory provisions, the doctrine is well settled that in order to create such a lien

the provisions of the statute must be strictly complied with. One of those provisions, and one which is manifestly material, is that property which cannot be fairly divided may be set apart to one or more of the parties interested therein, "upon the payment of a sum of money, *to be assessed by the said commissioners*," and as no such assessment has ever been made, we do not see how such a lien could ever arise. But more than this, the lien provided for by the statute to secure the sum necessary to produce equality of partition is a lien in favor of the other heirs or parties interested in the property assigned to one of them, upon the payment of a sum of money assessed by the commissioners in partition, and the officer of the court who makes the sale of other portions of the property has nothing to do with it. He may, by virtue of the statute, acquire a lien on the *property sold* by him to secure the purchase money of *such property;* but how he could acquire such lien upon property *not sold by him*, but assigned by the commissioners in partition to one or more of the parties interested, upon payment by them to the other parties of the sum of money assessed by the commissioners, it is very difficult, if not impossible, to conceive.

Under the view which we have taken, the questions presented by the other grounds of appeal cannot arise, and need not therefore be considered.

The judgment of this court is, that the judgment of the Circuit Court, in so far as it sets aside the return of the homestead appraisers in regard to the real estate, be reversed, and in so far as it confirms said return as to the personal property, it be affirmed.